Dufort v. City of New York Kayla Benzine for the plaintiff Ryan Dufort A central disputed question in this case is whether an eyewitness to a fight, Hua Young Park, identified Mr. Dufort in surveillance images. The city says she did, we say she didn't, and the district court resolved that fact dispute. It accepted the city's version of the facts, finding that Ms. Park identified Mr. Dufort by his clothing. But all she told the officers was that she recognized a color, the color maroon, as the color worn by one of the participants that night, and that's it. She didn't identify any feature specific to Ryan Dufort. I'm sorry, I want to understand exactly what was said to the police. Now, I realize we don't have a recording of that, we don't have notes of that, but what does the record tell us as exactly as possible about what she said? So, so she made a number of quite specific statements. For example, she was asked, is it fair to say that you only told the police in October of 2006 that you remember the color of the shirt, and that's it? Answer, yes. In terms of the person that you remember with the maroon shirt jumping and stomping, do you remember what the style of the shirt was? Answer, I don't remember. She was asked, what she remembers in, this is her deposition in this trial. That's her deposition in this case, that's correct. And, and what is there that, what testimony is there about, the first question you cited goes to this, this question. Evidence about what she told the police at the time, as opposed to what she remembers several years later when the case, when the civil case is on, or what she says during the criminal case, which is five years later. Right. Well, as your Honor correctly noted, we don't have DD-5s in this case, so, so we don't know what she said at that time. Well. Didn't the officers say what she said? Well, again, we don't even know what the officers said that she said, because they didn't, there's no contemporaneous documentation. When we go to the contemporaneous, you cited to us a moment ago something that she said in her deposition, quite properly, about what she told the police. What did the police say? What are, what are the, what is the totality of evidence that goes to, whenever it came up, what she told the police at the time? Well, you know, there's a couple statements. So, as your Honor correctly noted, she said in October of 2006, I only told them that I recognized the color. So, so there's that aspect of it. We have a third-party witness saying, I only told them about the color. And for the officer's testimony, we don't have a deposition in this case, but we do have what they said at the trial in this case, or excuse me, at the Wade hearing. I think one of, Detective Marotta testified that Ms. Park had identified Mr. Dufort in surveillance images, and at the time of the lineup, and we'll get to the lineup, because there's a lot of problems with the lineup in this case. But Detective Marotta said, look, she recognized Ryan Dufort. She identified Ryan Dufort. Ms. Park herself said, no, I just recognized the color of a piece of clothing. No, let's not, let's be very careful about no. The police say she said that's the guy. She may have said that's the guy based on the color or based on something else. Is there any, you know, what I'm trying to get at, you started by saying there's a factual dispute about whether she identified him. Now, whether she identified him well, what she based the identification on, these are all in dispute. But what is the testimony about whether she ever said to the police at the time, that guy in the picture, I saw him, whether it was based on intuition, messages from the gods, I don't know. But what, did she ever say that? Is that in dispute? Ms. Park's testimony is clear. She recognized the color of a shirt. Let's go back, try and sort it out. There were four different instances, right? There was the first, the first surveillance when she spoke to the police, she saw the surveillance tape and she did what she, she said what she saw and also said what she saw at the fight. That's the first instance. Then the next one is at the lineup. And then the next one is at the deposition. And then the next one is at the criminal trial. So let's break it down to the four different components. And I believe Judge Lynch is asking you about the first one. What's the evidence on the first one? The evidence on the first one is that we have the officer's testimony that she identified Mr. Dufort. And that's about it. We don't know how she made that identification. At the Wade hearing, I think that's correct, Your Honor, and I can double-check that. And that's testimony from one of the officers, Detective Morota. And then we have testimony years later by Ms. Park at our deposition, but she's referring back to that first moment in time when she first looked at those surveillance images. And Ms. Park says, I didn't recognize, I didn't know who this was. She also says, I don't remember what I said when she's asked about questions about what she told the police. That's true, Your Honor, and we're not running away from that. We understand that there are real factual questions here that are going to lead to tough questions on probable cause and qualified immunity. But those fact permutations should be decided by a jury at trial, not on a summary judgment motion. Mr. Dufort was 15 when he was incarcerated for almost five years. We know all the circumstances, and we know the problems they're having at Rikers Island, and people who are detained can be there for a long time. And so the real question here is, what could the officers reasonably believe at the time as this unfolded? And we're concentrating on the first one. Right. And then we've got the question that came up in connection with the lineup, and that's so there, I think she said that she identified him, can identify him at the line, can identify, can't identify him as his features, but he identified him, you know, that he saw, she saw the shirt. Right, exactly. Or saw the color, which was the only color that anybody was wearing in the lineup. Right, which is a classically suggestive lineup under... But the lineup, that evidence is never introduced against him. That lineup is the only evidence directly implicating Mr. Dufort that was presented to the grand jury. The grand jury was never told about the initial viewing of the surveillance images. All that was presented was that she identified him in the lineup. And when the lineup was presented to him in the grand jury, how was it presented in the grand jury? In other words, was it a full depiction of what she said, or was an officer saying she identified him in the lineup? Both Detective Morota and Ms. Park testified in front of the grand jury. And it was one of those things where you identified individual number three, and that individual was Ryan Dufort. And so there was absolutely no testimony about this issue of the fact that she didn't have an opportunity to observe Mr. Dufort in the first place. And so there's that problem with the lineup. More pertinent, she didn't in the grand jury inform the grand jury that the, that she was identifying him based on what the color of the clothing he was wearing. All she did was say, I picked number three out of the lineup. Exactly. Could I ask about, wasn't there also testimony before the grand jury that he, that, that, by one of the people there that evening, that he was at the bar with Dufort when the fight broke out, and that he saw Dufort holding a pipe? Was that before the grand jury? I'm not, I'll double check that I'm not, there were statements that he was there that night. That he was with a pipe. I'm not sure if, if testimony about the pipe was presented in front of the grand jury, but, but I would suggest either way, being present, even with a pipe, is not probable cause for an assault that left somebody dead. There's also video on the videos, one clearly sees, as I see it anyway, Mr. Dufort going towards the place where the attack takes place carrying the pipe. Does that play any role in the probable cause determination? Those are all facts that I think are, are very important for probable cause. But, but a key thing here is that we don't know whether it was Mr. Dufort or any one of the other number of people, dozens of people there that night, who had objects in their hands. Let's be clear, a lot of people went in with objects in their hands. And one was Dufort, and I think the video saw him, the pipe was identified as he was going in. And also, he came out, but I don't know if the pipe was visible at that point. But there was another guy who was wearing the same color who came out with a baseball bat, all right? And, and, and, and, and, and I guess there was some evidence, although maybe not, I don't know from whom, that there may have been other people wearing the same color. Is that correct? That's right. But, but I don't think we need to even reach those other people, because the fact is here, If he was the only person in the bar with that color shirt, that's a different, you got a different case. Well, well, all I meant to say is we, we just need to worry. I think we just need to focus on the fact that there was Mr. Dufort and another person who both entered the fight and both exited the fight and both wore maroon. And Ms. Park says herself, I can't tell who was who. Didn't Ms. Park say in her deposition that the guy with the baseball bat wasn't the guy she saw stomping because he had spiky hair? That's what she said at her deposition seven years later. Oh, that, we don't count it now. Well, there's no... Look, we either count the deposition or we don't. Let's try and be consistent here. Her testimony at the deposition, now it's relevant, it seems to me that there's no evidence that she told the police back at the time that the guy with the baseball bat had spiky hair and so he's not it. But she does say at her deposition, does she not, that the guy I saw stomping is not the red-shirted man with the baseball bat because he had spiky hair and the guy I saw evidently did not. That's correct. And I want to be clear about how I'm using the deposition. Ms. Park said in the deposition in October of 2006, I told the officers I could only recognize the color of a shirt. She didn't say in October of 2006, I told them that I knew it wasn't this other guy because he had spiky hair. We only know that from the deposition. It's not facts that were known to the officers at the time of the... Does that not cast some doubt on the proposition that she knew nothing about who she saw except the red shirt. She may not have articulated all of those things, but she is able, at least after the fact, to say the guy I saw did not have spiky hair, at least implicitly, at a minimum, because the person with the spiky hair is not the person I saw stomping. Well, I think that's an inference that would be drawn against us, which isn't appropriate at the summary judgment stage. There's no indication that she ever told the officers at the time of the arrest. But if she told the officers at the time of the arrest, that's the guy. And let's assume that they asked, how do you know? And she said, because of the color of his shirt. I saw a guy with that color shirt. Why do the police then have to comb the video for other guys wearing red shirts and then come back and cross-examine her at some point about that person? They've got what purports to be an identification, even if it's based on something rather vague, right? I don't think that's right, Your Honor. Probable cause has to be particularized. It has to be reasonably trustworthy information that this person did it. And here, you've got two people who fit that description, and you wouldn't have to comb the video to see it. No, but is there any evidence that she's saying... What the police are saying about this session is that they went through the video, and she says, that guy, because I saw a guy with that color shirt kicking. But she said, that guy. It's not like a naked interview where they just say, tell us all you remember. Maybe that would be a more objective way of doing it, but that's not always the way the police do it. They didn't just say, tell us all you remember. And she said, all I remember is I saw a guy in a red shirt. According to the police, she picked out Mr. Dufort from the video based on whatever she based it on. Is that not correct? That's what they say. That's a disputed fact. It's a disputed fact whether she said, that guy, or whether she said, that color. And a color, a recognition of a color is not an identification of a person. What else? What other evidence of color was there on the video, on the part of anybody else? Well... On the surveillance footage. So you have this other individual who entered the fight before Mr. Dufort and exited after him. And there's a moment outside, you can see in the surveillance video, where Ms. Park is looking straight at the back of that other individual. And all of that stuff is on the video. And I suggest that it's much more likely that it was that person who she recognized as Mr. Dufort. But either way, you know, 50% isn't good enough. It could be 50% that guy or 50% this guy. It's articulated as a fair probability. And if you know that the person is at the scene of the crime, he is carrying, you can see on the video, that he's carrying a pipe. He's wearing the color of clothing that the eyewitness says she saw the person wearing that color clothing stomp on the victim. That's not a fair probability. You need more than that. Even if you also know that there's another person also at the scene, could you have probable cause to arrest both? No, not in this case. Because Ms. Park said that she told officers that only one person wearing maroon had done the stomping. But in Maryland v. Pringle, three people are stopped who are in an automobile. There are narcotics in the automobile. The Supreme Court says there was probable cause to arrest all three as people possessing the narcotics. But the facts here... And you could not... Clearly, that wouldn't be enough to prove at trial that all three of the people possess the narcotics that are found in the car. This court has held that when there's a description of a group of people, a description of a person that could be met by a group of people, any number of people, and you don't know which one it was, that's not good enough for probable cause. That's... Any number of people. It's at a maximum two people. But where is the limit then? If in this courtroom, three people fit the description and it could have been any one of them, would that be enough for probable cause? I think the point, the way... Is it your point that probable means probable? In other words, more likely than not? And that 50-50 is not probable, but 51-49 would be? I think that's an excellent point. But the point that I was getting at is it has to be specific to a person. And the recognition of a color when there's more than one person that's wearing that color and more than one person that fits the circumstances is not specific to Ryan Duvort. For an undisputed fact, and I take it you're saying it is not, that Ms. Park pointed to Mr. Dufort on the video and said, I saw that guy stomping. And the officer says, how do you know it's him? Because I recognize the color of his shirt. In that circumstance, would you say there is or is not probable cause? And I recognize you say that that is a disputed fact. If it were undisputed, would that change the case for you? Um, I'm not sure it would, because I still think, you know, when you look at whether an eyewitness's statements are reliable, you have to look at the opportunity that she or he had to make those statements, to make those observations. And here you've got a witness in a very stressful situation. They're in the same space for under 35 seconds, probably less than that. Can I shift gears a little bit to the lineup and then the question of whether the prosecutors knew about the lineup? So you've made an argument here that the lineup was suggestive because Dufort was the only person in the lineup wearing a maroon shirt or maroon clothes. And let's assume that that's the case and it was a suggestive lineup. My question is, if the prosecutors knew that it was a suggestive lineup, or knew all about the lineup, then there would be a break in the chain for malicious prosecution insofar as trying to nail the police officers. And I gather that the prosecution is not implicated in this case anymore. So what is the evidence that the prosecution did not know about the suggestive nature of the lineup, apart from the grand jury testimony, which indicated, did not reveal any problems with the lineup? So the city has pointed to some statements that Ms. Park made in her deposition that she had told one of the ADAs at the time of the lineup or after that. But there's... Mackie. But that... Mackie, right? And we have the Mackie declaration. But we also have Ms. Park's statements herself, where she says, I don't remember what I told him. She says, to tell you the truth, I don't exactly remember what I said because I couldn't get my mind together because of the situation. Her statements are really, on this issue, all over the map. And... Based on my review of the record and help me understand it better, that sounds right to me. I found different statements at different parts of the deposition. I was unable to locate any place in which Ms. Park made clear that she informed the prosecutor of the basis of her identification or that she informed the prosecutor. I could find nowhere where the prosecutor... Where you could say, at this point in time, the prosecution knew about the nature of the lineup and or knew about the nature of her identification. Am I wrong about that? I think you're right about that. I think it's that second point that is really important here. And I think that this case is on all fours with this court's opinion in the United States, in Bermudez versus City of New York. And as you know, the court in that case found that even if the ADA had been involved in the investigation and had known some facts, the fact that the ADA wasn't there when the detective originally interviewed the eyewitness is key. Because in this case, even if the ADA knew at the lineup that Ms. Park had some hesitation about whether or not she could recognize Mr. Dufort, there's no indication anywhere that the ADA knew about that initial identification that Ms. Park made where we assert, where we would present to a jury that all she could recognize was the color of a piece of clothing and she did not identify Mr. Dufort. Thank you. May it please the court, Kathy Park for the appellees. The district court's grant of summary judgment should be affirmed  and the prosecution and the existence of probable cause equally undermines the plaintiff's due process claim in connection with his arrest and the fair trial claim fails because there's no evidence of any falsified evidence, there's no evidence of any falsification of evidence by the defendants, nor is there any evidence that they withheld exculpatory evidence in this trial. First, on the probable cause claim, I do want to emphasize that this... Does it matter in any way that this rather outrageous lineup is presented to the grand jury as evidence that they should use to indict? It doesn't and here's why. First, on the probable cause or on the false arrest claim, our... As we acknowledged below, the plaintiff was in custody at the time that he was brought to the precinct. Before the lineup and he's held continually from that point on for five years. That's right, your honor. But even without the grand jury indictment, even without the lineup identification, there was ample probable cause. The false arrest is taken care of by the fact that there's probable cause without the lineup and before the lineup. That's right. In fact, we would have had to show that there was probable cause in order to... Before that point. And a suggestive lineup leading to an invalid identification doesn't weaken the probable cause, just leaves it where it was before. That's right.  It doesn't dissipate the probable cause that existed at the time of arrest. Is there an argument here that the probable cause began to dissipate as the investigation continued and there was no one else other than Ms. Park who had identified the defendant as involved in the stomping? No, your honor. And here's why. There's additional evidence that came to light after the point in which he was brought to the precinct. You're talking about the Yoon testimony? There's the Yoon testimony. There's also Jonathan... That he punched her. There was no testimony from Park that he punched her, that there was any punching by the person. That's right, your honor. But the probable cause inquiry doesn't require a particular crime, or it just requires probable cause for any crime. It doesn't... He thought, I think he punched, he said, after he's practically beaten with a stick by the judge and the prosecutor at the time of his guilty plea to implicate other people. That's right. We're not relying on Yoon's testimony just as on its own to establish probable cause. We're merely pointing to it. We also have Jonathan Putt's testimony. He testified at the grand jury just to answer a previous question and he said that he overheard Duford agreeing with another perpetrator that the pipes did not bend, that they were really good and that... It's pretty well established that he had a pipe going in and a lot of people had pipes going in and apparently that was sort of customary for that particular establishment that people have weapons when they go in there, it seems. I mean, that's the impression one gets, right? Everybody was armed and it's, you know, that's... That's right, but it's relevant to this case because it was one of the weapons that was used in this group assault. There's no dispute that... Ms. Park didn't say she saw the person in the red shirt use a pipe. She said she saw the person in the red shirt stomping. That's right, Your Honour, but... How does the pipe help that identification? Because, Your Honour, it points to his criminality for a conceivable crime and that's all that's required for a probable cause. It's another piece of the evidence that points to the probability that he committed some crime in this group assault that involved perhaps multiple types of crimes, even if he was ultimately acquitted by a jury. It was reasonable for the police at various points at the time of the arrest and at various points during the prosecution to believe that he had some involvement in this group attack. For purposes of summary judgment, we have to assume, do we not, that it is a fact that he was only in the room where the assault took place for 35 seconds? Yes, Your Honour. I think for purposes of probable cause... For purposes of summary judgment, you would have to construe that in the plaintiff's favour. It's conceivable that the timers on the clocks are off or whatever. Right. The video, if you take the video markers, time markers on the different videos, it seems that from that, it's a reasonable inference in Mr. Dufort's favour that he was there for no more than... That's correct, but the summary judgment standard doesn't require, in looking at the probable cause inquiry, to take, for the police at the time of the arrest or at the time of the prosecution, to construe all inferences or all of the evidence in favour of the plaintiff's innocence. So if you look at it from that vantage point, yes, we have to look at... We have to assume it may have been 35 seconds. Without the police, you can't count the circumstances of which they are here at the time. That's right. You can't just sort of think about all the things that implicate Dufort and just forget the things that don't. It's the totality. That's right, but there's nothing that requires them to construe all of the evidence or draw conclusions in favour of the plaintiff's innocence. In fact, this court has made clear that even if there are consistent explanations for a plaintiff or suspect's innocence, that's not enough to undermine the existence of probable cause. You haven't articulated specifically why there was a buzz here. You have him going in... Right. ...and seen carrying a pipe. And then you also have a video of his coming out. And you have a video of him being in the room other than where the fight occurred, correct? That's right. And then 35 seconds later, I guess he's picked up on the exit video. Is that the one? That's right. And so he comes out. When he goes in, he's going in with people with pipes and people with weapons, right? When he comes out, is he accompanied by people at that time? Yes, he is leaving with a group of males holding... You can see at least two males holding bats. He's leaving at the same time as them. And so with the fact that you have the surveillance footage of him entering a bar with a one-and-a-half-foot pipe, which is indisputably one of the weapons that was used in this killing and assault, later exiting with the same group of males... Would that be enough? Let's forget the shirt. He's just going in. There's a fight. He's carrying a pipe going in. He's carrying a pipe coming out. He's going in with the people with pipes. He's coming out with people with pipes. And there's a big fight inside. And that's it. Would that be probable cause? It's enough where at a minimum, it's enough at least for arguable probable cause. It would have been enough for the police officers just with that evidence, where there's no dispute that that person is due for in the surveillance images or in the surveillance footage. That would be enough for the police to reasonably believe, or at least arguably reasonably believe, that he had committed some crime in the bar. Even if... That's going to be a lot of weight on the weapons then, right? Because you're very now, very close to the Supreme Court's decision in Ybarra. You can't search everyone at a bar because you have a well-founded suspicion that one of them is stealing drugs. It's the weapon, but it's also the fact that he was, he's placed at the scene at the very time and place of the crime with the people, with the other people who were associated with the crime. All of those, all the confluence of those factors would be enough to, again, just at the very least, support arguable probable cause to entitle the officers to qualified immunity. Even if a different officer in the same position would have reasonably disagreed. Certainly, there's no case on all fours addressing this precise situation that would have put the officers on notice that an arrest would have been inappropriate or illegal based on the information that was before them at the time. As Your Honor is well aware... Now, of course, things happened after. That's right. Well, immediately after that, of course, he asserted that he left the bar and didn't. And didn't fight. And he told the officers that. And then they also decided to have a suggestive lineup. And then there's a... Let me ask you this. The suggestive lineup, does that reflect on whether or not there was probable cause after the lineup to still hold him? It doesn't because it wasn't exculpatory in any respect. And you also have his statements at the interview admitting that he was at the scene of the attack, that his friends... Wouldn't a jury consider that they didn't have probable cause and they were trying to bolster their case by having a suggestive lineup? Wouldn't that be a relevant consideration? In other words, you could hold him for four days, but then if you put him in a lineup that's suggestive, maybe at that point, there could be an inference drawn against the police. No, Your Honor, because probable cause would have already been established prior to that point. But then you're constantly revising your estimate of whether there's probable cause as things go along. And it seems to me that at some point, maybe when they're having the lineup and it's a suggestive one, that they're trying to bolster their case in a way that's improper. And maybe it's an inference against the police. I don't know, in terms of their initial probable cause. Your Honor, it's correct that probable causes is continually evaluated as the proceedings continue. But the relevant inquiry is whether there was anything that would have dissipated the original probable cause that existed at the time of the arrest. With the inference that Judge Walker is referring to relate to qualified immunity? That is, it seems to me you're making the argument, which is supported in case law, that the probable cause inquiry is objective. That is, if there was probable cause, whether the police officers thought there was probable cause doesn't matter. Whether they reasonably or unreasonably tried to build a stronger case in order to build up proof beyond a reasonable doubt doesn't affect probable cause. But if we're talking about, if we were to decide that there was no probable cause, but maybe there was arguable probable cause, would the subjective intentions and beliefs of the officers limit their qualified immunity? It would not because the law of qualified immunity is very clear that you look at it, you don't consider the subjective intent of the officers. It's also an objective inquiry. That's right. If you got beyond all of this, you were looking at whether there was malicious prosecution. And it was concealed from the prosecutors that there was a suggestive lineup and the officers did engage in a suggestive lineup. At that point, it seems to me, leaving aside the initial probable cause question, assuming it against you, or at least arguably against you, do you, at that point, have malice sufficient for malicious prosecution? It would seem to me that that would be self-evident. If there's a suggestive lineup by the police and the police withhold that information from the prosecutor, which is arguable in this case, it'd be testimony both ways. And they don't tell the grand jury about it. And the grand jury just goes ahead and indicts. And then it finally comes out later at the trial that this all happened, and he's acquitted. At that point, don't you have the components of malicious prosecution anyway, the malice part? You don't, Your Honor, and here's why. You'd have to show that the police intentionally or deliberately withheld that, if we're assuming for that. If you're assuming that, they didn't tell the prosecution about the nature of the lineup, and they didn't tell the grand jury about the nature of the lineup. They just said, she identified him in the lineup, and she said, I identified him in the lineup, and didn't say anything beyond that. If you assume that, if there was evidence in the record, and there is not, that the prosecutors deliberately withheld, or the police deliberately, or in bad faith, withheld that information, then maybe you would have a close question on malice. It's not conclusive that they didn't, at this point, right? It's, I mean, that would be an open question, right? And it may turn out that they didn't withhold any information. Your Honor. Prosecutors knew exactly what was going on, but it may turn out that they did. That might be the situation if there was no evidence showing that they were not aware of the circumstances of the lineup in some other form or capacity. I do, I want to just touch- I don't know what you, I don't- Meaning, in this, meaning our argument is that here, the plaintiff, the witness did, we pointed to a couple places in the record where the plaintiff, or I'm sorry, the witness told the district attorneys from the beginning of the prosecution that she had only identified the lineup, or identified Duford in the lineup, just simply based on the color, that she didn't recognize his face. Maybe you could help- I thought that was debatable. I mean, I thought that there was evidence, there was evidence both ways. Let me just point to the record sites that I'm relying on, and then I'll address what I think is my plain, my adversary's argument as to evidence the other way. We pointed to pages 167 and 168 in the record, as well as 177 and 178. This is on page 41 of our brief. Now, the plaintiff in response points to just general testimony where she talks about how she doesn't necessarily remember everything that she told the officers. This is at her deposition testimony, or everything that she, recall everything that she may have said in prior proceedings or at prior points in time. But in her deposition testimony after that, after she makes that qualification, she then makes clear what she doesn't remember and what she does. And in discussing her conversations with the district attorney in terms of what she remembered about what she discussed with him, she makes clear that she pointed out that she didn't recognize him by his face and only by the color of his clothing. She didn't remember what else she told about that or what other conversations or what else in addition, she might've said in addition to that. But she unequivocally testifies that she's not sure if she said she was worried about his face, but she did say that she did remember discussing some concerns about the lineup because she only recognized him by the color of his clothing. The record, at least in my initial reviews of it, there's clearly record evidence that she testifies that at some point she told an ADA that she was concerned that she's only able to recognize Dufort based on his clothing. But I was unable to identify a record site where she says who that ADA was or when that conversation took place. So if you could help me with that. Sure, Your Honor. So page 178, I'll just qualify. She doesn't identify exactly who she spoke with at the district attorney's office, but she does say, when asked, is it fair to say that you also told whomever was there from the district attorney's office meeting or interviewing you in 2006, and that would have been at the beginning of the prosecution, with that with regard to Ryan Dufort, you could only identify the color of his clothes and not his face. And she replies, yes, unequivocally. We know some things for sure. We know that by the time of the criminal trial, somebody in the Queen's DA's office figured out that this lineup was bad because they didn't use it at the trial. They didn't even have it suppressed. It was just not offered at the trial, right? We also know that they did use it at the grand jury. So either the ADA was unaware at the time of the grand jury of the nature of the lineup, or we have some serious questions about the ethics of the ADA, who is not a defendant here and who has absolute immunity for that presentation. I mean, we know, in other words, that the DA used this lineup in the grand jury and did not use it at trial. Your Honor, I'm not sure if that's accurate. My understanding of the record, and I apologize, I don't have the exact record sites and I can provide in an additional letter, but my understanding is it's true that the district attorney's office did not explicitly rely on the lineup. Instead, the witness was asked to make an in-court identification, but she was questioned about, the lineup did come up in her in plaintiff's testimony, or in the witness's testimony. She was asked, did you look at seven lineups? Who did you identify in this lineup? And one of those lineups was the lineup that Dufort was in. So that testimony was presented to the jury. Now in a cross-examination, the circumstances of that lineup did come out that she had only recognized the color or she had not recognized his face and that was all before the jury. But to say that the prosecution at that point had just completely, or that's my understanding of what had happened at trial. One frustration here is that we are dealing, the defendants here are the police. Those are your clients and those are the only people you have to defend here. And those are also the people who have the deep pockets. Of course, they don't as police officers, but they're gonna be indemnified by the city. So that's who we're looking at and who we're trying to pin this whole problem on. But what frustrates me is that when we look at what happened in the Queens criminal justice process, it's fairly shocking. This young man spends five years at Rikers Island on a case that disintegrates when it's presented to a jury. And it looks as if either no one cared or no one thought about that for five years. Why it took five years to get this case to trial and why nobody on the prosecution side figured out that this was not a viable case against Mr. Dufort is pretty stunning to me. I don't understand it. But that's not in the record, we don't know. Maybe there were perfectly good reasons why that happened, I don't know. Because this record is understandably focused on the police and that's all we've got to deal with is whether this whole problem can be pinned on some officers who had this video surveillance evidence, who had Ms. Park saying what she was saying and who made a choice to arrest Mr. Dufort a few days after this incident occurred. And that's the case that we've got here. But I don't think it should go unremarked that this is a failure, it seems to me, whatever happens to this case against the police officers, it's a considerable failure of the criminal justice system in Queens County. It seems to me that Mr. Dufort spent five years of his formative years in a jail cell on a case on which he clearly could not be convicted. It's an editorial, but it just seems to me that to ignore that fact in this case would be wrong. Thank you. You don't have to answer because it's not your client that I'm complaining. Thank you, Your Honor. If there are no further questions, we rest on our briefs. There may be further statements, who knows. Just a brief rebuttal. I want to start with the pipe. Without Park's description in this case, there's dozens of people who were there that night that fit the description of being present and having an object in their hand and going towards the scene of where the crime happened. There's not sufficient particularity that a crime, that Mr. Dufort participated in a crime based on those facts alone. And turning to Ms. Park's statements, there are... What you're saying is that basically the police couldn't go and just simply arrest everybody who came out of there with a weapon or went in with a weapon and say we have probable cause to arrest 20 people. Exactly. The indispensable link here is Ms. Park's statements and there are fact disputes about what those statements... Why do you say that so confidently? This is a gang assault. If there are people standing around with weapons while other people with weapons are beating somebody to death on the floor, is there not probable cause to say that all those other people standing around with weapons are acting in concert or by their very presence encouraging... With weapons, encouraging and supporting those who are affirmatively using the weapons? Why wouldn't that be a reasonable basis to arrest those people? Well, I want to be clear that I'm talking about probable cause for an assault that left somebody dead and a murder. Now, the city... If nothing terrible happened, you could arrest everybody, but if somebody dies, you can't? The city in the district court didn't argue that there was probable cause to arrest for some other crime. They argued that there was probable cause to arrest for assault and murder and they've waived that argument by not raising it. What about as accomplices? Do you need to be actually doing the kicking and stomping and beating if you are standing there with a weapon as a friend of the people who are there with weapons who are beating on somebody from a rival group? Is there not probable cause, at least, to say that those people are implicated in the crime? I don't think that the court needs to reach that here because there are fact disputes about what happened. There are fact disputes as to whether or not he was standing there. There are fact disputes as to whether or not she recognized him as somebody standing there. These are all fact disputes that should go... I know this can't go to the initial decision to arrest, but didn't your client, after the arrest, state that he passed over, he essentially stepped over the body of one of the victims on the ground on his way out of the bar? That is what he made in his statement, but again, that's not... That's not part of the initial probable cause to arrest. That's not part of the initial probable cause and I don't think it gets you to being participated, even as a bystander, because he was getting out of there. And without Ms. Park's statements, which are disputed fact, we don't know what his participation was here and that's something that we should be allowed to put in front of a jury. And in the minute that I have left, I just want to touch on Your Honor's point about the totality of the circumstances here. There were five other eyewitnesses who did not identify Mr. Dufort. There was another person there who matched the description of Ms. Park's statements, which shows that there's insufficient particularity for probable cause. And there are fact disputes about what Ms. Park says. And to just point in the record where Ms. Park made statements about the colour of a piece of clothing, if you look at A176, she was asked, when you talked about the clothing that you knew, to the best of your recollection today, what you described about the clothing was the colour of the clothing only. Is that right? And she says, yes. And then she later says, is it fair to say that you only told the police in October of 2006 that you remember the colour of the shirt and that's it? And she says, yes. The city has pointed to different citations in the transcript, but that's a classic factual dispute, pointing to different pieces of evidence and weighing those pieces of evidence should be left for a jury back in the district court. And for those reasons, this court should reverse the district court's opinion. Thank you. Thank you both. Very well argued.